Olivia YOUNG, Plaintiff–Appellant,

v.

ST. LOUIS UNIVERSITY and Richard Stensrude, Defendants–Respondents.

No. 53958.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 16, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 13, 1989.

Application to Transfer Denied
Aug. 1, 1989.

Mary Anne Olwell Sedey, St. Louis, for plaintiff-appellant.

Ben Ely, Jr., St. Louis, for defendants-respondents.

PER CURIAM.

Plaintiff appeals from the judgment based on the jury verdict finding against her and in favor of defendants St. Louis University and Richard Stensrude, Director of St. Louis University Medical Center. We affirm.

Appellant brought suit in the lower court on the theory of intentional infliction of emotional distress allegedly caused by Dr. Stensrude's screening in her presence of a

pornographic video-tape, *Deep Throat.* Appellant's theory was that this action, coupled with the environment in which the film was shown, allegedly caused her to suffer from a non-psychotic mental condition know as post-traumatic stress syndrome. The defense theory was that appellant suffered from a pre-existing mental psychosis and that the incident did not cause her mental illness. These two theories became the central focus of the trial and both sides presented extensive expert testimony on the issues.

The jury found in favor of respondents. The issues on appeal all relate to the conflicting psychiatric evidence as to causation of appellant's mental distress. Appellant cites four points of error, three of which are related to the admission or exclusion of evidence. The fourth asserts cumulative error.

■ Appellant's first point is that the trial court erred in admitting the depositions of the three defense psychiatrists because appellant contends their diagnoses of paranoid schizophrenia were based upon appellant's statement that her sister had suffered from schizophrenia. At trial, appellant stated she received this impression from a "medical professional" in an emergency room after he had examined her sister for ten minutes and she related her sister's diagnosis to the psychiatrists as family medical history. Because there was no other evidence of the sister's schizophrenia presented at trial, appellant argues that the statement constituted hearsay and the expert testimony based on this hearsay is inadmissible.

Respondents argue that the statement is not hearsay because it falls under the past medical history exception, which allows evidence of a patient's statements of medical history made to a doctor which are "reasonably pertinent" to diagnosis and treatment. *Breeding v. Dodson Trailer Repair*, 679 S.W.2d 281, 285 (Mo. banc 1984). While this exception appears to apply at first blush, a closer examination reveals that it is inappropriate in this case because the evidence in question involves double hearsay. The exception can be used to excuse the hearsay element of the doctors relying on what appellant told them, but it does not excuse the hearsay of appellant relating what someone else told her. *Breeding,* and the Missouri cases citing it, involve statements of how an injury happened, which is generally within the knowledge of the person making the statement. This court stated in *Eickelman v. Illinois Cent. Gulf R. Co.,* 714 S.W.2d 611, 615 (Mo.App.1986), that *"Breeding* never suggested that a patient's statements about what other doctors have told him are admissible" and held that a trial court correctly excluded a record containing such evidence as part of a medical history. Similarly, appellant's statements about her sister were also hearsay.

■ The fact that the depositions mentioned this hearsay, however, does not mean that they were inadmissible. While expert testimony must be based upon personal knowledge or observation of competent evidence, *Kozeny–Wagner, Inc. v. Shark,* 709 S.W.2d 149, 152 (Mo.App.1986), the trial judge is given wide discretion to determine if the expert's opinion should be admitted. *Disbrow v. Boehmer,* 711 S.W.2d 917 (Mo.App.1986). It is proper to allow hearsay evidence as a basis for an expert opinion if that evidence is otherwise trustworthy and necessary. *Albers v. Hemphill Contracting Co. Inc.,* 740 S.W.2d 660, 663 (Mo.App.1987). A portion of the decision to admit expert testimony must rest upon how much reliance an expert placed upon the hearsay information in reaching his diagnosis. When an expert has gathered sufficient competent evidence to support an opinion, his testimony is not inadmissible merely because he was aware of hearsay evidence as long as there is no evidence that his opinion was based on hearsay. *See Reifsteck v. Miller,* 369 S.W.2d 229, 237 (Mo.1963).

In the case at bar, the defense presented the depositions of three psychiatrists, Dr. El Toumi, Dr. Potter and Dr. Stillings, who had all examined appellant and who all opined that appellant suffered from paranoid schizophrenia before the movie incident. They felt the incident may have ex-

acerbated her existing condition, but could not have caused post-traumatic stress syndrome as appellant claimed.[1] After Dr. El Toumi related his examination of appellant and discussed his provisional diagnosis of schizophrenia, respondents' attorney asked him to assume that appellant's sister had been diagnosed schizophrenic and then asked if this fact would be significant. Dr. El Toumi replied affirmatively, but there was no indication that he was under the impression that such a diagnosis had in fact taken place or that it was tied into his diagnosis. Dr. Potter was asked a similar question and replied that the diagnosis would be significant but "not a tremendous amount." Dr. El Toumi's and Dr. Potter's depositions give no indication that either psychiatrist knew of, let alone relied on, the hearsay evidence about appellant's sister when forming their opinions. The trial court clearly did not abuse its discretion in admitting them.

Because of this finding, even if we assume Dr. Stillings' deposition was inadmissible because of the hearsay we need not reverse the verdict since Dr. El Toumi's and Dr. Potter's depositions provided substantial competent evidence to support the judgment. *Rinderknecht v. Caulfield*, 716 S.W.2d 405, 407 (Mo.App.1986). Nevertheless, we will discuss Dr. Stillings' deposition as well. Admittedly, Dr. Stillings' deposition indicated that he may have considered the sister's diagnosis in reaching his conclusions. When asked about significant background material which appellant gave him at the first of their meetings, Dr. Stillings stated that appellant told him that her sister had been diagnosed as schizophrenic. Sometime later, he explained that schizophrenia tends to run in families, so that the sister's schizophrenia would be consistent with his diagnosis of appellant. These discussions, however, only occupied 3 to 4 pages of Dr. Stillings' 160 page deposition. The deposition was primarily devoted to relating his clinical findings as to appellant's behavior. In addition, Dr. Stillings' initial diagnosis, based on his first visit with appellant and on her medical and family history, was marital dysfunction. It was not until after her second visit that he diagnosed her as suffering from a hostile and aggressive personality disorder or paranoia. Even later, he added possible schizophrenia as an alternative.

If appellant's attorney at the deposition believed Dr. Stillings' diagnosis was based on the hearsay, she could have objected or presented a hypothetical question asking Dr. Stillings to specifically exclude the sister's condition from his opinion. In fact, appellant's attorney was given an opportunity to alter the hypothetical question to Dr. Stillings, but did not mention the sister's diagnosis in her changes to the hypothetical. Such questioning would have been the most effective manner to determine whether Dr. Stillings considered this inadmissible factor in forming his opinion, but we can still conclude from the deposition that he did not base his opinion on that piece of hearsay. At most, the sister's schizophrenia would have corroborated his own observations and opinion. The trial court did not abuse its discretion in admitting Dr. Stillings' deposition.

■ Appellant's second point of error is that the lower court erred in admitting the deposition of Dr. El Toumi because it was a provisional diagnosis based upon a one hour interview. As noted earlier, an expert may testify based upon personal knowledge or his review of other competent evidence. Dr. El Toumi did interview appellant and thus based his diagnosis upon personal knowledge. Any defects in his diagnosis because of his relatively short investigation of appellant's mental health relate to the weight his testimony should be given, not its admissibility. *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 801, 802 (Mo.App.1975).

■ Appellant's third point alleges that the trial court erred in not admitting the Diagnostic and Statistical Manual Third Edition Revised (DSM–III–R) published in 1987 by the American Psychiatric Association because it falls under the learned trea-

---

**1.** In addition to providing their own diagnoses, the experts were questioned in detail about the validity of the diagnosis upon which appellant bases her theory of injury. All three expressed the opinion that the diagnosis of post-traumatic stress syndrome, while a recognized mental condition, was a wholly inappropriate explanation of appellant's mental disorder.

tise exception to the hearsay rule. *Baker v. Atkins,* 258 S.W.2d 16, 20 (Mo.App.1953). The trial judge refused to allow appellant's "proposed use" of the manual because he did not feel its authorship met the standards required by the exception. *See Grippe v. Momtazee,* 705 S.W.2d 551, 556 (Mo.App.1986). Appellant then conducted an offer of proof with its psychological expert, Doctor Murphy, who testified that the manual was regarded as a "rule book." The judge again refused to allow appellant to use the manual "in the nature of a text to buttress or support the witness' testimony as a type of direct substantive, affirmative proof of what he's saying."

Respondents argue that there was no error because the manual was never formally offered into evidence. We agree with respondents, but hesitate to dismiss the point based on this reasoning alone. Although there is no formal offer or rejection reflected in the record, there is an extensive amount of discussion on the use of the manual. More disturbing, however, is the fact that the record does not reflect what use appellant intended to make of the manual. We do not know if appellant planned to enter the manual into evidence or merely have Dr. Murphy refer to it in his testimony. Nor can we determine what topics appellant planned to draw from the manual. A trial judge has great discretion in determining the admissibility of evidence and such a decision will not be reversed absent an abuse of discretion. *Iota Management v. Boulevard Inv. Co.,* 731 S.W.2d 399, 412 (Mo.App.1987). Based on the incomplete record before us, we cannot determine if that discretion was abused and we decline to reverse on these grounds.

Point four of appellant's brief argues that the sum of errors alleged were so prejudicial as to amount to reversible error. Because we have found no error, this point is obviously meritless.

Judgment affirmed.

All Judges concur.

