STATE of Missouri, Respondent,

v.

Jose GONZALEZ, Appellant.

Jose D. GONZALEZ, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 48334, WD 49564.

Missouri Court of Appeals,
Western District.

June 20, 1995.

Rebecca L. Kurz, Appellate Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and HANNA, JJ.

KENNEDY, Presiding Judge.

Defendant appeals from jury convictions of second degree murder, section 565.021.1, RSMo1986, and armed criminal action, section 571.015.1, RSMo1986, and sentences as a prior offender to concurrent terms of life imprisonment and three years' imprisonment, respectively.

Defendant also appeals from the dismissal of his Rule 29.15 motion.

The facts of the case:

Defendant fatally shot Thomas Lacy. Lacy lived with Lula Long, who was the manager of an apartment house in Kansas City. Long lived on the first floor. Lula Long's daughter, Janie Quesada, lived upstairs. Early one morning, Lula Long sought to intervene in an altercation between Janie Quesada and defendant, which was taking place in the upstairs hallway. The record does not show why defendant was at the place. With him were two men identified as "Russo" and Andres Palma; they were not directly involved in the altercation between defendant and Janie Quesada, but were standing by. Long, reaching the top of the stairs, told defendant she was going to call the police. Defendant raced past her down the stairs, meeting Lacy, who had just come out of Lula Long's apartment. He shot at Lacy. His first shot missed its target. He shot a second time, striking Lacy in the chest and inflicting a fatal wound.

We need not detail the evidence supporting the foregoing account of the crime, for there is no challenge to the sufficiency of the evidence to support the conviction.

Defendant testified that he shot in self-defense—that he believed Lacy was armed and he feared for his life.

Defendant complains of the prosecutor's closing argument, wherein he said: "[Gonzalez] admits to committing felonies in other jurisdictions. He is now in our jurisdiction, Jackson County, wreaking more havoc ... I'm asking you to put an end to all this here and now. Let it stop here in Jackson County. No longer should this man commit any more crimes. Find this man guilty of murder in the second degree and armed criminal action ... Mr. Gonzalez, under our laws, the laws he's made a mockery of for nearly a decade now, came in here cloaked in the presumption of innocence. The laws that he's made a mockery of for almost ten years now—." "Well, he's had it. He's pled his case. It's over. It's time for the mockery to be concluded. As I told you, this admitted killer began his reign of lawlessness back in the early '80s ... This admitted killer began his reign of lawlessness some years ago, with, as he told you, burglary, property damage, hit and run, a laundry list of other offenses." Gonzalez had testified on direct examination that he had been convicted of burglary, grand theft, hit and run, property damage escape and resisting arrest.

■ Defendant's complaint is that the prosecutor's argument urged the jury to consider the convictions as evidence of defendant's bad character and as evidence of guilt, rather than as affecting his credibility as a witness.

These arguments are excessive and improper. The prosecutor was urging the defendant's prior convictions not as affecting defendant's credibility as a witness, but as a reason for convicting him of the present crime.

Defendant's objections were adequate to preserve the alleged error for review. His counsel's first and detailed objection was sustained, but outside the hearing of the jury. (That objection was made when the prosecutor said: "He admits to committing felonies in other jurisdictions. Here he is now in our jurisdiction, Jackson County, wreaking more havoc—") Defendant's motion to strike the improper argument was, however, overruled. So far as the jury was informed, the argument had the court's approval. Subsequent objections were overruled.

■ It is rare that we reverse a judgment of conviction because of improper jury argumentations. To do so, we must find that the improper argument was prejudicial to defendant, going so far as to say that it must have had a "decisive effect." *State v. Lumpkin,* 850 S.W.2d 388, 393 (Mo.App.1993). It is unlikely in this case that we would reverse because of improper argument, except for the error which we discuss in the succeeding paragraphs.

■ In another point, the defendant claims the court erred in allowing the prosecutor to inquire of defendant about an admission he had purportedly made. The circumstances were as follows:

The prosecutor in his cross-examination of defendant asked the following questions, to which the defendant gave the following answers:

Q (By Mr. Humphrey) How long have you been in the county jail, sir?

A Ever since the police caught me.

Q You met a John Harvell in jail?

A I met a lot of people. I met too many people. I don't remember. I don't remember.

Q But you would not have boasted to anybody you met that you killed a man in cold blood?

A No, what am I going to say? I don't talk to anyone about my case.

The defendant objected on the ground that no statement of defendant to John Harvell had been disclosed by the State to the defendant. The defendant had filed a request for discovery prior to trial, requesting, among other things, "the substance of any oral statements made by the defendant." The defendant was entitled to any such statements pursuant to Rule 25.03(A)(2), V.A.M.R.

**938**

John Harvell was not listed by the State as a witness.

The State did not attempt in its case in chief or in rebuttal to prove that defendant had actually made the statement which the prosecutor asked about, and defendant's denial stood unchallenged. Because of this, the attorney general argues, the defendant suffered no prejudice.

The question of the prosecutor implies, however, that the prosecutor had knowledge of a specific admission made to a specific person at a specific place. By indirection, an alleged admission of the defendant was brought before the jury. See *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979).

The prosecutor, when his good faith in asking the question was challenged by defendant's counsel, showed the judge a letter. The letter was marked as an exhibit, but not introduced in evidence. It appears from the transcript that defense counsel did not see the letter. The judge announced, after looking at the letter, that the prosecutor had grounds for asking the question about the admission. Under a Rule 25.03 order to supplement the record, the State has filed the letter with this court. It is copied in the margin.[1]

The attorney general, arguing no prejudice to defendant, asks how the defendant might have used the letter to his advantage, if it had been disclosed to him. How the defendant would have used it, we do not know. His counsel would at least not have been surprised by the questions to defendant, and would have been equipped to repair any damage done, or perceived to have been done, by the prosecutor's questions. He would have been equipped to challenge the prosecutor's good faith in asking the defendant about the statement. He might have sought and obtained an in limine order preventing the cross-examination questions, if the State did

not have enough confidence in the witness John Harvell to call him as a witness to the facts stated in his letter.

Improper jury argument, and the failure to disclose the statement attributed to defendant, combine to defendant's prejudice, and require reversal and a new trial.

Defendant makes several other allegations of trial court error, which we do not rule. They arise from trial court incidents which may easily be avoided, and ought not to arise in another trial.

Judgment reversed, and cause remanded for a new trial.

All concur.

1. To: Prosecuting Attorneys Office
   From: John Ray Harvell (JCDC) 3A6
   Subject: Information on the "Jose Gonzalas Murder Case"
   Ladies and Gentleman, I know all about the "Gonzalas Murder Case," he told me in detail about what happen the night, of the murder. Come over and speak with me in private on this matter, and I'll not give any information, unless I

can get probation on my case. I don't believe in taking a persons life in "cold blood," the information I have will be very valuable to your case against him. He brags about killing that man, and I believe the information to be correct, I'm waiting.

        Sincerely
        John R. Harvell